**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No.

TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA

Plaintiff,

v.

GEORGETOWN VILLAGE HOMEOWNERS ASSOCIATION, INC.

Defendants.

---

**COMPLAINT AND JURY DEMAND**

---

COMES NOW, Plaintiff, Travelers Property Casualty Company of America, by and through its undersigned counsel, and for its Complaint against Georgetown Village Homeowners Association, Inc., states and alleges as follows:

**PARTIES**

1.      Travelers Property Casualty Company of America ("Travelers") is a foreign corporation organized under the laws of Connecticut with its principal place of business located in Hartford Connecticut.  Travelers is licensed to write insurance in the State of Colorado.

2.      Defendant, Georgetown Village Homeowners Association, Inc. ("Georgetown") is a Colorado corporation with its principal place of business in Denver Colorado.  Georgetown is a homeowners' association for Georgetown Village, a covenant-controlled planned community in Centennial Colorado (the "Property").

## JURISDICTION AND VENUE

3.      This Court has jurisdiction under 28 U.S.C. §1332(a) because complete diversity exists between Travelers and Georgetown, and the amount in controversy in this matter exceeds seventy-five thousand dollars ($75,000) exclusive of interests and costs.

4.      Venue is proper in the District of Colorado pursuant to 28 U.S.C. §1391(b) because Georgetown is a Colorado Corporation and a substantial part of the events giving rise to Georgetown's property damage claim, and the adjustment and appraisal thereof, occurred in this District.  Venue in this District is also proper because this action addresses an insurance dispute involving alleged property damage that occurred in Colorado.

## FACTUAL BACKGROUND

5.      Travelers issued insurance Policy No. 680-7D873754-17-14 to Georgetown (the "Policy"), which included building and personal property coverage for the Property subject to its terms, conditions, limitations and exclusions.  The Policy was issued with effective dates of November 1, 2017 to November 1, 2018.  The cited portions of the Policy are attached hereto as **Exhibit A**.

6.      The Policy provides coverage for "direct physical loss of or damage to Covered Property . . . caused by or resulting from a Covered Cause of Loss."  This coverage is subject to the Policy's coverage terms, limitations, conditions, and exclusions.

7.      The Business Owners Property Coverage Form contains the following relevant property loss conditions:

**E.  PROPERTY LOSS CONDITIONS**

   \*\*\*

   **3.  Duties in the Event of Loss or Damage**
      **a.**  You must see that the following are done in the event of loss or damage to Covered Property:

\*\*\*\*

**(5)** At our request, give us complete inventories of the damaged and undamaged property. Include quantities, costs, values and amount of loss claimed.

**(6)** As often as may be reasonably required, permit us to inspect the property proving the loss or damage and examine your books and records.

Also permit us to take samples of damaged and undamaged property for inspection, testing and analysis, and permit us to make copies from your books and records.

**(9)** Cooperate with us in the investigation and settlement of the claim.

**b.** We may examine any insured under oath, while not in the presence of any other insured and at such times as may be reasonably required, about any matter relating to this insurance or the claim, including an insured's books and records. In the event of an examination, an insured's answers must be signed.

**4. Loss Payment – Building and Personal Property**

\*\*\*

**e.** We will determine the value of Covered Property in the event of covered loss or damage as follows:

**(1)** At replacement cost (without deduction for depreciation), except as provided in Paragraphs **(2)** through **(18)** below.

\*\*\*

**(b)** We will not pay on a replacement cost basis for any loss or damage:

**(i)** Until the lost or damaged property is actually repaired or replaced; and

**(ii)** Unless the repairs or replacement are made as soon as reasonably possible after the loss or damage.

\*\*\*

**(c)** We will not pay more for loss or damage on a replacement cost basis than the least of Paragraphs **(i)**, **(ii)** or **(iii)** subject to Paragraph **(d)** below:

**(i)** The Limit of Insurance applicable to the lost or damaged property;

**(ii)** The cost to replace the lost or damaged property with other property:

**a)** Of comparable material and quality; and

**b)** Used for the same purpose; or

**(iii)** The amount actually spent that is necessary to repair or replace the lost or damaged property.

**Exhibit A** at 27-29.

8.      The Business Owners Property Coverage Form also contains the following

Commercial Property Condition:

**F.    COMMERCIAL PROPERTY CONDITIONS**
  **4. Legal Action Against Us**

No one may bring a legal action against us under this Coverage Form unless:

**a.** There has been full compliance with all of the terms of this Coverage Form; and

    **b.**    The action is brought within 2 years after the date on which the direct physical loss or damage occurred.

**Exhibit A** at 33.

9.    By endorsement, the Business Owners Property Coverage Form is modified and includes the following Commercial Property Condition:

**F.**    **COMMERCIAL PROPERTY CONDITIONS**

    **1.**    **Concealment, Misrepresentation or Fraud**

We will not pay for any loss or damage in any case of:
1. Concealment or misrepresentation of a material fact; or
2. Fraud;
   Committed by you or any other insured ('insured") at any time and relating to coverage under this policy.

Endorsement attached hereto as **Exhibit A** at 40.

10.    On or about June 19, 2018, a hailstorm impacted the Property causing damage.

11.    On or about May 5, 2019, Georgetown entered into a contract with Premier Roofing, LLC to replace all asphalt roofing shingles, flashings and accessories with a new roofing system ("Repair Contract").  A copy of the Repair Contract is attached hereto as **Exhibit B**. The Repair Contract between Georgetown and Premier gave Premier permission to discuss all insurance claim-related matters with Travelers. **Exhibit B** at 1, ¶ 1.2.

12.    Premier Roofing was Georgetown's agent and had the actual or apparent authority to discuss the scope and cost of the repair of the roof damage with Travelers pursuant to the terms of the Repair Contract.

13.    The Repair Contract also set forth the scope of work and the cost.  It reads as follows:

2.6  Description of Work and Cost.  A written order shall be used to document the scope of repair services (the "Task Order"), and will be a part of this contract as if attached to this Agreement or repeated herein.  The Task Order will describe the scope of work and cost for

> the property repairs, and will include the construction schedule and payment terms. The Task Order shall not be effective unless approved by the Customer and Companies, and evidenced by the signatures of both parties. . . .

**Exhibit B** at 3, ¶ 2.6.

14.     On or about June 3, 2019, Georgetown entered into a contract with a public adjusting firm, Pivot Adjusters ("PA Contract"). Pursuant to the contract, Georgetown granted Pivot Adjusters the irrevocable right to adjust the loss for Georgetown and agreed to pay Pivot Adjusters 10% of the total claim replacement cost benefits. The PA Contract is attached hereto as **Exhibit C**.

15.     Pivot Adjusters was Georgetown's agent and had the actual or apparent authority to adjust the loss for Georgetown.

16.     Upon information and belief, Georgetown never revoked Premier's or Pivot Adjuster's authority to act on its behalf.

17.     On June 4, 2019, Georgetown submitted a claim to Travelers for damages resulting from the June 19, 2018 storm and was assigned claim number FKF2731.

18.     Travelers worked with Georgetown's public adjuster and undertook an investigation and adjustment of Georgetown's claim. Based on its investigation and adjustment, Travelers produced an estimate in the amount of $3,173,296.20 on May 15, 2020.

19.     On May 21, 2020, Premier Roofing provided Georgetown a payment schedule and a Task Order for the work at the property in accordance with the Repair Contract. Premier assured Georgetown that it was "an expert in insurance claims, insurance methods, and construction job costing" and that it "understand[s] and ha[s] calculated each risk and cost prior to moving forward." *See* Letter and Payment Schedule attached hereto as **Exhibit D.**

20.     The payment schedule and Task Order were both in the amount of $3,173,296.20 and exactly mirrored Travelers' May 15, 2020 estimate.  Travelers was not provided a copy of the contract, the payment schedule or the Task Order, in May of 2020.

21.     On August 17, 2020, Kristi Kennison, as Georgetown's Treasurer, signed the Task Order totaling $3,173,296.20.  The Task Order stated:

> The Task Order is limited to the approved scope of work and amounts by the insurance company as of the date set forth above. Any additional work beyond what is approved by Insurance Company must be approved via a written change order signed and dated by both parties.  In the event, additional work is provided in this Task Order that is not approved by the Insurance Company, the HOA shall not be responsible for payment of any additional sums for such work even if completed by Company.  It is understood that the approved scope of work includes painting gutters and any other trim and siding that may be replaced or repaired.  It is further understood that any damage caused during the project, including but not limited to siding, trim, painted surfaces, landscaping, hardscaping, and decks, will be included in the scope of the project and repaired by Premier Roofing.

22.     On August 26, 2020, Georgetown's public adjuster sent Travelers an email stating that "[w]e have reached an impasse on getting to a settlement."  Included in the email was an executed appraisal demand signed by Georgetown's Treasurer, Kristi Kennison.  Also included with the appraisal demand was a repair estimate totaling $5,153,860.90.

23.     Unaware of the fact that Georgetown and Premier had entered into a contract for an agreed price and scope of repairs, Travelers agreed to proceed to appraisal in accordance with the appraisal provision contained in the Policy.  It reads as follows:

**E.  PROPERTY LOSS CONDITIONS**

The following conditions apply in addition to the Common Policy Conditions:

**2.  Appraisal**

If we and you disagree on the value of the property, the amount of Net Income and operating expense or the amount of loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the value of the property, the amount of Net Income and operating expense or the amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

**a.**  Pay its chosen appraiser; and

**b.**  Bear the other expenses of the appraisal and umpire equally.

If there is an appraisal, we will still retain our right to deny the claim.

**Exhibit A** at 27.

24.     On October 19, 2020, while the appraisal was underway, Georgetown's public adjuster sent Travelers an email with an invoice and an Xactimate estimate from Premier Roofing totaling $4,563,527.83 and advised the work at Georgetown was completed and requested payment of depreciation.

25.     In response to the email of October 19, 2020, Travelers requested copies of all permits, as well as photos of the completed work for its review.

26.     On January 21, 2021, Travelers requested additional information from Georgetown to support its claim, including:  (a) Executed contracts between "Georgetown" (or anyone acting on its behalf)  and any contractors, subcontractors and/or tradesmen related to the repairs at the Property, arising from the subject storm, including but not limited to Premier Roofing and Pivot Adjusters; (b) Purchase orders for all materials pertaining to the Georgetown Villages HOA project, reflecting both quantities and pricing; (c) Rental equipment receipts and invoices for all equipment used for the Georgetown Villages HOA project; (d) Material drop sheets for all materials at "Georgetown;" (e) Tree trimming invoices to include address and date of service; (f) All payments issued by Premier Roofing to sub-contractors and/or material providers for the Georgetown HOA project (if made by check please include front and back of check); (g)  All payments made from "Georgetown" to Premier Roofing and/or or any sub-contractors and/or

material providers associated with Georgetown HOA project (if made by check please include front and back of checks).

27.     In response to Travelers' requests, Georgetown's public adjuster provided only a copy of the Repair Contract between Georgetown and Premier but failed to produce the Task Order and Payment Schedule setting the price term.  Georgetown's public adjuster also provided copies of four payments Georgetown made to Premier totaling $1,720,326.86.

28.     Upon information and belief, during the appraisal process Travelers' appraiser requested documentation of the actual costs of the project but was refused that information.

29.     The appraisal award was entered on March 12, 2021 and set the RCV amount of $4,366.218.15 and ACV of $4,050,378.79.  The award also allowed for $495,789.61 for line items to be "paid when incurred" and calculated depreciation at $315,839.36.

30.     On April 9, 2021, Travelers paid the full amount of the ACV appraisal award, less the insured's deductible and Travelers' prior payments, subject to a reservation of rights.    The reservation of rights again requested the items set forth in paragraph 26 above.

31.     Travelers again requested the information set forth in paragraph 26 in a letter dated April 28, 2021.

32.     Travelers again requested the information set forth in paragraph 26 in a letter dated July 14, 2021.

33.     To date, Georgetown has not provided sufficient information to Travelers to support its estimate in the amount of $5,153,860.90 submitted on its behalf on August 26, 2020.

34.     To date, Georgetown has not provided sufficient information to support the $4,563,527.83 Premier Roofing invoice submitted to Travelers on its behalf.

35.     To date, Georgetown has not provided sufficient information to support payment of either the ACV or RCV amounts of the appraisal award.

36.     To date, Travelers has paid $3,348,327.23 in benefits to Georgetown.

37.     Upon information and belief, Georgetown has paid Premier Roofing only $3,173,296.20, pursuant to the terms of the Repair Contract's Task Order and Payment Schedule and the work is now complete.

38.     Thus, the "amount actually spent" by Georgetown to have its Property repaired was $3,173,296.20.   After applying Georgetown's deductible of $702,051.56 the benefits due under the Policy total $2,471,244.64.     Accordingly, Travelers has overpaid $877,082.59 in policy benefits beyond that which Georgetown was required to pay Premier to repair the Property.

<u>**FIRST CLAIM FOR RELIEF**</u>
**BREACH OF CONTRACT**

39.     Travelers hereby incorporates by reference the averments in paragraphs 1 through 38 as though fully set forth herein.

40.     Pursuant to the Policy, as set forth above, Georgetown has a contractual obligation to cooperate with Travelers in the investigation of its claim.

41.     Pursuant to the Policy, as set forth above, Georgetown has a contractual obligation to not conceal or misrepresent material facts or to commit fraud under the Policy.

42.     Georgetown violated the Policy as set forth above by failing to cooperate with Travelers and concealing and misrepresenting information about the Property and claim.

43.     Under Colorado law, where a policy contains a concealment, misrepresentation or fraud clause, and an insured and/or its agent(s) misrepresents or conceals material facts, coverage is voided under the Policy.

44.     Due to Georgetown's material breaches of the Policy, Travelers has suffered and continues to suffer actual damages, including a significant overpayment of benefits, plus interest.

45.     At all times, Travelers fulfilled its obligations under the Policy.

## SECOND CLAIM FOR RELIEF
## BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING

46.     Travelers incorporates by reference paragraphs 1 through 45 as though fully set forth herein.

47.     Insurance contracts contain an implied covenant of good faith and fair dealing.

48.     Georgetown breached its covenant of good faith and fair dealing as set forth above by submitting inflated estimates and invoices and by attempting to obtain benefits in excess of those due under the Policy.

49.     Travelers at all times fulfilled its obligations under the Policy and acted in accordance with its duty of good faith and fair dealing.

50.     Because of Georgetown's breach of the covenant of good faith and fair dealing, Travelers has suffered, and continues to suffer actual damages.  Travelers seeks compensatory damages for Georgetown's breach, including but not limited to reimbursement of any amount Travelers paid to date and/or repayment of all benefits, including interest.

## THIRD CLAIM FOR RELIEF
## DECLARATORY JUDGMENT

51.     Travelers incorporates paragraphs 1-49 as though fully set forth herein.

52.     The Policy conditions coverage on Georgetown's full compliance with the terms of its Policy.  Georgetown has not complied with the terms of the Policy as it has not cooperated with Travelers by refusing to provide the requested claim documentation and/or has concealed and/or

misrepresented material facts by submitting inflated estimates and invoices and failing to provide Travelers with a copy of the repair contract it had with Premier.

53.     Based on this conduct, Travelers respectfully requests that the Court enter a declaratory judgment in its favor and against Georgetown finding that Georgetown breached the Policy's terms by not complying with its terms; concealing and misrepresenting material facts; and failing to provide information necessary for Travelers to adjust the claim.

## FOURTH CLAIM FOR RELIEF
### RECOUPMENT

54.     Travelers incorporates paragraphs 1-53 as though fully set forth herein.

55.     Georgetown's Property was allegedly damaged by a hailstorm that occurred on or about June 18, 2019.

56.     Acting in good faith at all times, Travelers issued benefit payments to Georgetown totaling $3,173,296.20.

57.     Due to the acts and/or omissions of Georgetown, as set forth above, Travelers is entitled to recoupment of all amounts paid to date for damage allegedly caused to the Property as a result of the June 18, 2019 storm.

58.     Travelers right to recoupment arises out of the same transaction or occurrence as Georgetown's claim against Travelers for benefits under the Policy.

59.     Travelers seeks recoupment of all benefits paid and/or monetary damages in an amount that does not exceed the benefits sought by Georgetown under the Policy.

WHEREFORE, Travelers respectfully requests this Court enter judgment on its claims, awarding all damages as determined by a jury, pre and post judgment interest, costs and reasonable attorney's fees as permitted by law and granting such other and further relief as the Court deems just and proper.

## **JURY DEMAND**

Travelers demands a jury on all triable issues.

Respectfully submitted this 12th day of October, 2021.

CLYDE & CO US LLP

*/s/    Jeri J. Wettestad*
Amy M. Samberg, #42999
Jeri J. Wettestad, #33719
2301 Blake Street, Suite 100
Denver, CO 80205
Telephone: (213) 358-7600
Facsimile: (213) 358-7650
Amy.Samberg@clydeco.us
Jeri.Wettestad@clydeco.us
***Attorneys for Plaintiff Travelers Property Casualty Company of America***

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on the 12th day of October, 2021, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

William H. Short, Esq.
Altitude Community Law P.C.
555 Zang Street, Suite 100
Lakewood, CO 80228
Telephone: (303) 432-9999
Facsimile: (303) 432-0999
bshort@altitude.law
***Attorney for Defendant***

*/s/ Rachel Salabak*
Rachel Salabak